IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 9, 2020

FILED
03/24/2021
Clerk of the
Appellate Courts

## COLIN D. SAVAGE v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Montgomery County**
**No. 63CC1-2009-CR-16      William R. Goodman III, Judge**

———————————————————

### No. M2019-01740-CCA-R3-PC

———————————————————

The Petitioner, Colin D. Savage, appeals the Montgomery County Circuit Court's denial of his petition for post-conviction relief, arguing that he received ineffective assistance of counsel. After review, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ALAN E. GLENN, J., joined.

Douglas A. Trant and Julia Anna Trant, Knoxville, Tennessee, for the Appellant, Colin D. Savage.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Assistant Attorney General; John W. Carney, Jr., District Attorney General; and Robert Nash, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

The Petitioner was indicted in Count 1 for conspiracy to commit aggravated burglary, in Count 2 for aggravated burglary, in Count 3 for conspiracy to commit theft of property valued at $10,000 or more but less than $60,000, in Count 4 for especially aggravated robbery, in Count 5 for especially aggravated kidnapping, and in Count 6 for theft of property valued at $500 or less. State v. Colin D. Savage, No. M2011-00666-CCA-R3-CD, 2012 WL 4054814, at *1 (Tenn. Crim. App. Sept. 17, 2012), perm. app. denied (Tenn. Jan. 22, 2013).

A detailed summary of the evidence is unnecessary for the purposes of this post-conviction appeal. On October 14, 2008, the Petitioner and his codefendant, Rodney Glover, pursuant to an established plan, unlawfully entered the home of ninety-two-year-

old victim Oma England. Id. at *1-2. Upon entering the home, the Petitioner and Glover severely beat the victim, bound her hands and feet, and robbed her. Id. at *1-3. Glover, who was awaiting sentencing after having been convicted of aggravated kidnapping, aggravated burglary, conspiracy to commit aggravated burglary, and conspiracy to commit theft of property valued at $10,000 or more for his actions in this case, specifically testified that the Petitioner hit the victim twice with a nightstick taken from the victim's home. Id. at *1, *3. The partial deoxyribonucleic acid (DNA) profile obtained from a latex glove found in the victim's laundry room and the partial DNA profile obtained from a piece of a latex glove found on the victim's steps were consistent with the Petitioner's DNA. Id. at *6, *8. In addition, the DNA profile obtained from a cigarette butt found inside the victim's home matched the Petitioner's DNA. Id. at *4, *7. Several items of the victim's property, including gold flatware, jewelry, and a coin collection, were found on the Petitioner's property. Id. at *7. The victim's nightstick was found at the home of Teresa Harley, with whom Glover resided in Georgia. Id. Although tests indicated the presence of DNA on the nightstick, the test results were inconclusive due to insufficient or degraded DNA. Id. at *8. Joseph DeMaio, a fellow inmate of both the Petitioner and Glover, testified that Glover told him he tied up the victim with a telephone cord during the incident. Id.

At the beginning of the Petitioner's August 16, 2010 trial, the State read the indictment, and when the trial court asked for the Petitioner's plea to each of the counts, trial counsel made the following statement in the presence of the jury:

> Count One is an allegation of conspiracy to [commit] aggravated burglary and [the Petitioner] pleads guilty.
>
> Count Two is an allegation of aggravated burglary and he pleads guilty.
>
> Count Three i[s] an allegation of conspiracy to [commit] theft [of property valued] over ten thousand dollars and he pleads guilty.
>
> Count Four is an allegation of especially aggravated robbery and he pleads not guilty.
>
> Count Five is an allegation of especially aggravated kidnapping and he pleads not guilty.
>
> Count Six is an allegation of theft [of property valued] under five hundred dollars and he pleads guilty.

Thereafter, four of the State's witnesses testified at the Petitioner's trial, and at the conclusion of this testimony, the trial court dismissed the jury for the night. Then, in a hearing outside the presence of the jury, the trial court and trial counsel had the following exchange:

| | |
|---|---|
| Trial court: | [Trial counsel], you have entered pleas of guilty on behalf of your client to several of these charges. I don't think I have ever had that occur before[.] So does that mean that he is guilty of those [charges] and I do not submit those to the jury? |
| Trial counsel: | I haven't done it either. I did it—it was a tactical decision, but have I ever done it on some and not all of them, no. Here is [the Petitioner] if you want to go through the coll[o]quy with respect to the four counts that I have already told the jury he was guilty of? We could do that now, we could do it in the morning? And you could, if you chose, to withdraw those counts from the jury? I don't know what the State's position is on that? It may be confusing? Maybe we can put a jury instruction that the Court has already accepted his guilty pleas on those four [counts], just something like that? |
| . . . . | |
| Trial court: | I guess to me . . . the best thing to do is to [go] through that with [the Petitioner] and make sure that he understands what he is doing— |
| Trial counsel: | Yes sir. |
| Trial court: | [T]hen it will not be a jury question and I will take those [counts] out of the charge and substitute— |
| Trial counsel: | Substitute just a paragraph— |
| Trial court: | That he pled guilty to these [counts] and you are not to make a decision on those? |
| Trial counsel: | Yes sir. |

| Trial court: | Words to that effect. Leaving then, the especially aggravated kidnapping and the especially aggravated robbery? |
|---|---|
| Trial counsel: | Yes sir. |

At that point, the Petitioner was sworn in, and the trial court, the Petitioner, and trial counsel had the following discussion, which was also outside the presence of the jury:

| Trial court: | [Petitioner] then, you understand that you have a right to proceed in this jury trial on all counts? |
|---|---|
| Petitioner: | Yes, sir. |
| Trial court: | Do you understand by entering this plea of guilty that the Court then will find you guilty of those offenses and the jury will not be doing that? |
| Petitioner: | Yes sir. |
| Trial court: | All right, now you would have a right, of course, to plead not guilty—which you didn't do, but you had the right to do that and require the State to prove that you were guilty of those four offenses of conspiracy to commit aggravated burglary, aggravated burglary, conspiracy to commit theft over ten thousand [dollars] and in count six, theft of that license plate; do you understand that? |
| Petitioner: | Yes sir. |
| Trial court: | So do you give up your right as to those offenses to require the State of Tennessee to prove guilt beyond a reasonable doubt? |
| Petitioner: | Yes, sir. |
| . . . . | |
| Trial court: | As to these offenses that I just went over, the State would not have to prove anything. In other words, you are giving up |

- 4 -

|  |  |
|---|---|
| | your right to require the State of Tennessee to prove guilt beyond a reasonable doubt, do you understand that? |
| Petitioner: | Yes, sir, absolutely. |
| Trial court: | Now, you have a right to confront witnesses, which that is what [trial counsel] is doing on your behalf by cross[-] examining the witnesses that he believes need to be cross[-] examined. They have to testify in your presence, under oath. As to these offenses that you are pleading guilty, you are giving up that right to confront those witnesses, do you understand that? |
| Petitioner: | Yes sir. |
| Trial court: | I guess—it is somewhat confusing as to splitting these, but you would have also had a right to require persons to come to Court and testify on your behalf as to these offenses. You are certainly not giving up your right to subpoena witnesses [on] these other two [counts], but you would be as to these four [offenses to which you are pleading guilty]. Do you understand that? |
| Petitioner: | Yes sir. |
| Trial court: | That means then as to those four [offenses], there will be no further trial, no further witnesses, do you understand that? |
| Petitioner: | Yes, sir. |
| Trial court: | Is that what you believe to be in your best interests? |
| Petitioner: | Yes, sir. |
| Trial court: | All right now—as far as those four offenses, you are also giving up your right to appeal to a higher Court. If you had had a trial and were found guilty and sentenced by the Court, you would have a right to an appeal, do you understand as to guilt or innocence, you are giving up that right to appeal as to those four counts? |

Petitioner: Yes, sir.

Trial court: [Trial counsel] is here and as he said, [this is] a matter of strategy, and with your agreement, you are entering these pleas. This case, of course, will continue and [trial counsel] has been ready and will continue to be ready to try these cases, this one case but these other counts. You are not giving up your right to have an attorney, or assist in the trial of this matter but you certainly have a right to have an attorney to represent you at all critical stages of these proceedings, do you understand that?

Petitioner: Yes sir.

. . . .

Trial court: [Petitioner] then, as I was saying, you have a right to remain silent. No one can force you to enter this plea. No one can force you to answer my questions or say anything that would be incriminating. We have a jury trial going on. You are not giving up your right to remain silent at that jury trial. You are not giving up your right to testify on these two other charges. Do you understand that it is—as to these four, that you are giving up your right to remain silent?

Petitioner: Yes sir.

Trial court: That also means you are forever going to be barred from testifying about these charges to a jury as far as guilt or innocence is concerned as to these charges, do you understand that?

Petitioner: Very much so, sir.

Trial court: If you are convicted of anything in the future, then these convictions would be used to increase punishment, do you understand that?

Petitioner: Yes sir[.]

. . . .

| Trial court: | All right, then you want me to accept your pleas then and this agreement? |
|---|---|
| Petitioner: | Yes, sir. |

The Petitioner acknowledged that he was guilty of the offenses in Counts 1, 2, 3, and 6, and the trial court accepted the Petitioner's guilty pleas to each of those counts. The Petitioner then proceeded to trial on, and was convicted of, the remaining charges of especially aggravated robbery in Count 4 and especially aggravated kidnapping in Count 5.

Following a sentencing hearing, the trial court merged the Petitioner's conviction for conspiracy to commit theft of property valued at $10,000 or more with his conviction for conspiracy to commit aggravated burglary and imposed a sentence of four years. Id. at *10. The court then sentenced the Petitioner to six years for the aggravated burglary conviction, twenty-four years each for the especially aggravated robbery conviction and the especially aggravated kidnapping conviction, and eleven months and twenty-nine days for the conviction for theft of property valued at $500 or less. Id. The trial court ordered that the sentences for the especially aggravated robbery and especially aggravated kidnapping convictions be served consecutively to one another and that the remaining sentences be served concurrently to those sentences, for an effective sentence of forty-eight years at one hundred percent release eligibility. Id.

On direct appeal, this court affirmed the Petitioner's convictions and sentences, and the Tennessee Supreme Court denied permission to appeal. Id. at *18.

On January 15, 2014, the Petitioner, represented by counsel, timely filed a petition for post-conviction relief, alleging that trial counsel provided ineffective assistance in a number of ways. After the Petitioner's attorney and five other attorneys appointed to the Petitioner's case were allowed to withdraw, the Petitioner's family hired post-conviction counsel, who filed an amended petition for post-conviction relief, alleging in part that trial counsel was ineffective in advising the Petitioner to enter his guilty pleas in the presence of the jury, in failing to object to the admission of the nightstick, in failing to call Teresa Harley to testify at trial, and in failing to impeach Rodney Glover. The post-conviction court later determined that the Petitioner was indigent and appointed post-conviction counsel to continue representing him.

At the July 12, 2019 post-conviction hearing,[1] the Petitioner testified that trial counsel never objected to the introduction of the nightstick, even though there was no useful DNA on it. He claimed there was no evidence establishing the nightstick's relevance, other than codefendant Rodney Glover's testimony that the Petitioner had used the nightstick to hit the victim. Although the Petitioner acknowledged going with Glover to the victim's home, he claimed that Glover had beaten the victim.

The Petitioner also asserted that trial counsel never called Teresa Harley to testify at trial. He claimed Harley could have rebutted Glover's testimony about the nightstick by stating that Glover left the nightstick at her home and that she overheard Glover tell John Privette about what he had done to the victim.

In addition, the Petitioner claimed that trial counsel failed to impeach Glover with his criminal history. He asserted that Glover had "a very extensive criminal record" and that "the latest thing," he thought, was Glover's conviction for "vehicular homicide." The Petitioner also stated that trial counsel never cross-examined Glover about the number of times he put his hands on the victim or about the incriminating statements that Glover had made to Joseph DeMaio. He said that Glover told DeMaio that he did not want "to go down alone" in this case but that the jury was never informed of this statement. The Petitioner also said trial counsel neglected to emphasize the lack of evidence corroborating Glover's testimony.

The Petitioner admitted that trial counsel informed him of the State's offer of twenty years; however, he claimed that trial counsel advised him that he would probably receive a sentence of only fifteen to twenty years if convicted at trial because he was a Range I offender and would likely receive concurrent sentencing. He said trial counsel told him that it would not make a difference whether he proceeded to trial or accepted the State's offer because "either way" he would "end up with the same amount of time." The Petitioner claimed he ultimately rejected the State's offer of twenty years because he had a chance "at beating the . . . two charges" if he proceeded to trial. However, he asserted that upon being convicted of these two offenses, he actually received a forty-eight-year sentence. The Petitioner said that trial counsel never informed him that he was facing a sentence significantly longer than twenty years if convicted at trial. When the Petitioner was asked whether he would have taken the twenty-year sentence if he had known his sentence exposure, he replied, "I wanted to take the 20 years from the start."

The Petitioner said trial counsel announced that he was entering guilty pleas to four of the charged offenses at the beginning of trial. However, he claimed he had "no clue"

---

[1] The delay of more than five years between the filing of the petition and the post-conviction hearing seems to have occurred because the Petitioner's numerous attorneys filed motions to withdraw.

- 8 -

why trial counsel made this announcement in the presence of the jury. He said he did not remember trial counsel ever informing him of the prejudicial implications of entering these guilty pleas in the presence of the jury at the beginning of his trial.

The Petitioner admitted that he had wanted Teresa Harley to testify to everything codefendant Glover had done during the incident with the victim but not to testify about the Petitioner's involvement in the victim's burglary.

The Petitioner acknowledged that after the State had presented some proof at trial, the trial court had a hearing outside the presence of the jury wherein he entered his guilty pleas to Counts 1, 2, 3, and 6. He said that during this hearing, the court asked him if he understood that he had a right to proceed in this jury trial on all counts, and he replied, "Yes, sir." He also admitted that the court asked him if he understood that, by entering his guilty pleas, the court would find him guilty of the offenses in those counts and the jury would not be determining his guilt for those offenses, and he replied, "Yes, sir." The Petitioner claimed that he merely followed the advice of trial counsel when he entered his guilty pleas and denied that he and trial counsel discussed his guilty pleas before he entered them. The Petitioner said that although the trial transcript showed that he said he understood the consequences of pleading guilty and wanted to enter his guilty pleas, he claimed he pled guilty based on a "spur of the moment thing" that trial counsel "came up with" and that he did not understand what was happening.

Teresa Harley testified that she lived near the Petitioner in Georgia. She said that after these crimes occurred, she saw Rodney Glover, who admitted that he had "tied the [victim] up[,]" and had done "the beating[,]" and that the Petitioner had run away. She said that Glover brought the victim's belongings, including a sterling silver set, a fur coat, and the nightstick, to her home and then the Petitioner and Glover split the proceeds of their crimes while at her house.

Harley said that although she was available to testify at trial, she was never called as a witness because they said she "wasn't needed[,]" even though she "took time off from work" and "came all the way up here." Harley admitted that she used methamphetamine at the time of these offenses. She knew that the Petitioner also used methamphetamine but denied that the Petitioner had ever provided her with methamphetamine.

Trial counsel testified that he had practiced law for thirty years, that ninety percent of his practice was dedicated to criminal defense, and that prior to entering private practice, he had been an assistant district attorney. He said that he represented the Petitioner at trial and that he and the Petitioner had approximately fifteen conversations about the nature of the Petitioner's charges and his sentence exposure.

Trial counsel stated that he and the Petitioner had numerous discussions regarding settlement of the case. He attempted to negotiate a settlement and verified that the State had made the Petitioner a twenty-year offer. Trial counsel explained that the Petitioner rejected this offer because he wanted a shorter sentence and that the State provided no other offers.

Trial counsel said that by the time of trial, he knew that the Petitioner's DNA had been found at the crime scene and that some of the victim's property had been found in the Petitioner's backyard. In light of this damaging evidence, trial counsel talked to the Petitioner the morning of trial about employing a defense strategy wherein the Petitioner entered guilty pleas to the four less serious charges in the jury's presence in order to gain credibility. He said that after he and the Petitioner discussed this defense strategy, the Petitioner approved the strategy. Trial counsel acknowledged that this strategy ran the risk of making the Petitioner appear guilty of all the charges to the jury; however, he said there was also a risk that the jury would convict the Petitioner of everything "if we didn't own up to something[.]" He explained that given the amount of evidence connecting the Petitioner to the crimes, he was "trying to seek some credibility with the jury."

Trial counsel asserted that there was a jailhouse recording of a conversation between the Petitioner and Teresa Harley or the Petitioner's girlfriend, Ashley Reynolds, wherein the Petitioner wanted to remind Harley that she overheard Glover talking about tying up and beating the victim. Two jailhouse recordings of conversations between the Petitioner and Reynolds were entered as exhibits during the post-conviction hearing. In one of these recordings, the Petitioner told Reynolds to remind Harley to tell his attorney that she heard Glover talking about tying up and beating the victim so Harley could be a witness at trial and keep him from spending substantial time in prison. In the other recording, the Petitioner told Reynolds that he wanted Harley to talk about what she heard Glover say about the incident but wanted Harley to "exclude[e]" any mention of the Petitioner's involvement in these crimes when she talked to his attorney.

Trial counsel said that based upon his investigation, there was no one from Georgia, including Teresa Harley, who would have been helpful to the Petitioner at trial, and he informed the Petitioner of this fact. Trial counsel added that he advised the Petitioner that there would not be testimony at trial from Ashley Reynolds, Teresa Harley, or anyone else.

Trial counsel acknowledged that if Harley had testified that she heard Glover say that he beat up the victim, it would have been helpful. He also admitted he did not object to the introduction of the nightstick at trial, which was inconclusive as to DNA. However, he stated that the nightstick was "arguably relevant" and admissible because the victim had been beaten with an object that matched the description of the nightstick.

At the conclusion of the hearing, the State made the following arguments regarding the Petitioner's claims:

> All evidence shows that [the Petitioner was on board with pleading [guilty] in front of the jury to the crimes he would . . . admit to in order to gain credibility. We've heard [from trial counsel].

> This was a case where a ninety-year-old woman was beat[en] severely and [the Petitioner]'s D.N.A. is in the house on—on several occasions. Property from the victim was found under his shed. He is certainly connected with going into the house.

> In order to gain credibility, [t]he [Petitioner] pled to what they would and hoped they could have jury nullification. It happens all the time.

> [The Petitioner] then, in a break, did answer all the questions from the Court in the plea colloquy, "Yes, sir. Yes, sir. Yes, sir. Yes, sir."

> There's no doubt he knew what he was doing and he did it voluntarily.

> . . . Mr. Glover testified that [the Petitioner] used the nightstick [to beat the victim]. It was—the State put on proof that the nightstick was found in Ms. Harley's residence, where Mr. Glover was living. The nightstick didn't point to anyone specifically.

> There is some corroboration by Mr. Glover and the medical proof that [the victim]'s eye socket was completely broken with . . . a blunt force object. It's probably relevant. That's the . . . standard.

> I understand the—Teresa Harley, the decision not to call her. Phone calls of [the Petitioner] . . . telling M[s]. Reynolds to go to Ms. Harley to get her to tell the story that Rodney [Glover] did it. And then the next day, making a specific comment to exclude any of [the Petitioner's] part in this crime.

> Whether he wants to open that door, that's the decision of trial counsel. Ms. Harley gets on the stand. These jail calls come in. Got no prayer. That's a strateg[ic] decision.

> There's some talk about Joseph DeMaio, and [he] was a jailhouse snitch [who] spent time with Glover. The State put him on. Based on the

transcript, Mr. DeMaio said the same exact thing supposedly that Ms. Harley said, that Glover did the tying and beating up [of the victim]. The jury discredited that testimony.

. . . .

I don't think [the jury] would have credited Ms. Harley, given what's on those jail calls. . . . Those phone calls at least imply . . . that [the Petitioner was] sending people to influence testimony and wanting his part to be excluded. That's the plain reading of those calls.

. . . .

An entry of guilty pleas in front of the jury, while novel, [trial counsel] had a strategy, to try to go before a jury when he's going to say, "Two people were in the house and one of them beat her," he's trying to gain credibility [with the jury by arguing that the Petitioner, although present, did not beat the victim]. That's certainly a justified trial strategy.

[Trial counsel]'s testimony is that [the Petitioner] rejected . . . the State['s offer] and decided to go to trial. . . .

In response, post-conviction counsel argued that Teresa Harley was "not a jailhouse snitch" and "would have testified very compellingly that it was Mr. Glover who admitted that he's the one that did the beating." He also argued,

The phone call does not direct Ms. Harley to testify or to tell anyone that she should lie about his involvement, just that—what happened. And that excludes [the Petitioner] from the beating, because he didn't beat her, and that's what he wanted Ms. Harley to testify to, and that's how she consistently testified today.

We don't know what, if anything, Ms. Reynolds told Ms. Harley about the jail call. That's not been established in the evidence.

So I—I think . . . that we've established by clear and convincing evidence that a different result could have been reached in this case, had Ms. Harley been called to testify and would have testified that Mr. Glover admitted to her that he was the person who committed the aggravated portion of these offenses; the aggravated assault, aggravated burglary, aggravated kidnapping, because he's the one that used a weapon.

- 12 -

Upon hearing this argument, the State countered, "[w]hether Mr. Glover did it or whether [the Petitioner] did it, you can't get past criminal responsibility and the natural [and] probable consequences."

On August 27, 2019, the post-conviction court entered a written order denying relief. In it, the court made the following findings of fact and conclusions of law regarding the claim that trial counsel provided ineffective assistance in announcing the Petitioner's guilty pleas in the presence of the jury:

> [I]t is asserted that trial counsel was ineffective, and Petitioner was denied due process of law because Petitioner entered his plea to certain charges in the indictment with the jury present. Trial counsel testified that the entry of the plea of guilty to the charges of conspiracy to commit aggravated burglary, aggravated burglary, conspiracy to commit theft [of property] over $10,000.00, and theft of property valued at less than $500.00 [] was done only after reviewing the action with Petitioner, and done in an effort to enhance the Petitioner's credibility, so as to support Petitioner's position that he was not guilty of the more serious charges. . . . The plea of guilty in the presence of the jury was reviewed with Petitioner, and counsel testified as to a reasonable basis for such action[;] therefore[,] this court finds Petitioner has failed to establish by clear and convincing evidence that counsel's decision in this regard constitutes ineffective assistance.

The post-conviction court also made the following findings and conclusions regarding the Petitioner's multiple claims that trial counsel provided ineffective assistance at trial:

> Petitioner asserts that trial counsel was ineffective, and that Petitioner was denied due process as a result of trial counsel's failure to object to the introduction of a night stick, which was introduced as Trial Exhibit No. 5. Petitioner contends that since tests for DNA on the night stick were inconclusive due to insufficient or degraded DNA relating to the Petitioner, that the night stick should not have been admitted into evidence. At trial the co-defendant, Rodney Glover, testified that he observed Petitioner pick up the night stick in the house of the victim and hold on[to] it after tying up the victim . . . . The night stick was later recovered from [Glover]'s home in Georgia. The witness, Rodney Glover, identified the night stick, thereby establishing the foundation for the introduction of the item into evidence. The first prong of Strickland requires the "lawyer's performance to be

- 13 -

deficient[,"] as it relates to the admission of the night stick[. T]his court finds that the admission into evidence was proper, and that the presence of identifiable DNA was not required for its admission. Therefore[,] this contention is found to be without merit.

. . . .

. . . Petitioner contends trial counsel provided ineffective assistance as a result of not calling Teresa Harley to testify on behalf of Petitioner. At the Post[-]Conviction Hearing, Teresa Harley testified that the co-defendant, Rodney Glover, told her that he had tied up the victim and that Glover brought the cell phone, night stick, silver[,] and fur coat to the house occupied by Ms. Harley. Ms. Harley also testified that she was a user of methamphetamine[] and used the drug with Petitioner, who lived across the road from her in Georgia. Trial counsel testified that [Ashley Reynolds] was recorded in a jail conversation with Petitioner in which the Petitioner instructed her to get some folks to offer beneficial testimony. Based on this information, trial counsel made the determination that there would not be anyone from the community in Georgia [who] would be helpful to the Petitioner. . . . There is a reasonable basis for the decision made by counsel to not call Ms. Harley, and therefore this court finds that Petitioner has failed to establish by clear and convincing evidence that counsel's decision in this regard constitutes ineffective assistance, therefor[e,] this contention is found to be without merit.

. . . .

. . . Petitioner asserts trial counsel was deficient in failing to cross[-]examine the co-defendant, Rodney Glover, as to his own criminal record, and as to how many times Glover put his hands on the victim. While there may be a basis to theorize that a jury would discount the testimony of Rodney Glover, had his criminal record been made known, or that the number of times that Rodney Glover placed his hands on the victim[] may have either diminished the credibility of Glover or lessened the culpability of the Petitioner, such would be speculation. Nevertheless, the second prong of <u>Strickland</u> requires that any deficient performance prejudice the defense, and such prejudice must be established by clear and convincing evidence. To establish prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." <u>Strickland v. Washington</u>, 466 U.S. at 694. It must be established that counsel's deficient performance was of such a degree that it deprived the

- 14 -

Petitioner of a fair trial[] and called into question the reliability of the outcome." Pylant v. State, 263 S.W.3d 854, at 869 (Tenn. 2008). Based on the trial transcript[,] this court does not find the failure of trial counsel to cross[-]examine the co-defendant as to his criminal record, or to ask how many times he placed his hands on the victim, to have prejudiced the Petitioner. Therefore[,] this issue is found to be without merit.

Finally, as to the Petitioner's claim that he was entitled to relief under the cumulative error doctrine, the post-conviction court made the following findings and conclusions:

Petitioner argues that the cumulative effect of the errors set forth in the Petition for Post[-]Conviction Relief and Amendments thereto, together with the proof at the Post[-]Conviction Hearing support the grant of the relief sought. Proof of prejudice sufficient to establish constitutionally ineffective counsel is met by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Nesbit v. State, 452 S.W.3d 779, at 787 (Tenn. 2014) (citing Strickland, 466 U.S. at 694, 104 S. Ct. 2052; State v. Goad, 938 S.W.2d 363, at 370 (Tenn. 1996)).

For the reasons set forth above, the Petition for Post-Conviction Relief is denied.

On September 26, 2019, the Petitioner filed a timely notice of appeal.

## ANALYSIS

The Petitioner argues that trial counsel provided ineffective assistance. He claims that trial counsel's decision to announce his guilty pleas to four counts in the presence of the jury at the beginning of his trial was ineffective. He also asserts that trial counsel provided ineffective assistance at trial by failing to object to the introduction of the nightstick, by failing to call Teresa Hartley as a witness, and by failing to impeach his codefendant Rodney Glover. Finally, the Petitioner contends that the cumulative effect of all of trial counsel's errors deprived him of effective assistance of counsel. The Petitioner claims that he has established a reasonable probability that but for trial counsel's errors, he would have been found guilty of lesser charges or would have received shorter sentences. In response, the State contends that the post-conviction court properly denied the Petitioner relief. We conclude that the Petitioner has failed to establish that trial counsel was ineffective.

- 15 -

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction or sentence is void or voidable because of an abridgement of a constitutional right. Tenn. Code Ann. § 40-30-103. A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. Id. § 40-30-110(f); see Tenn. Sup. Ct. R. 28, § 8(D)(1); Nesbit v. State, 452 S.W.3d 779, 786 (Tenn. 2014). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

A claim for post-conviction relief based on alleged ineffective assistance of counsel presents a mixed question of law and fact. Mobley v. State, 397 S.W.3d 70, 80 (Tenn. 2013) (citing Calvert v. State, 342 S.W.3d 477, 485 (Tenn. 2011)). This court reviews "a post-conviction court's conclusions of law, decisions involving mixed questions of law and fact, and its application of law to its factual findings de novo without a presumption of correctness." Whitehead v. State, 402 S.W.3d 615, 621 (Tenn. 2013) (citing Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011); Calvert, 342 S.W.3d at 485). However, a post-conviction court's findings of fact are conclusive on appeal unless the evidence in the record preponderates against them. Calvert, 342 S.W.3d at 485 (citing Grindstaff, 297 S.W.3d at 216; State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999)). "Accordingly, appellate courts are not free to re-weigh or re-evaluate the evidence, nor are they free to substitute their own inferences for those drawn by the post-conviction court." Whitehead, 402 S.W.3d at 621 (citing State v. Honeycutt, 54 S.W.3d 762, 766 (Tenn. 2001)). "As a general matter, appellate courts must defer to a post-conviction court's findings with regard to witness credibility, the weight and value of witness testimony, and the resolution of factual issues presented by the evidence." Id. (citing Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999)).

The right to effective assistance of counsel is protected by both the United States Constitution and the Tennessee Constitution. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996); Strickland v. Washington, 466 U.S. 668, 687 (1984). A petitioner successfully demonstrates deficient performance when the petitioner establishes that his attorney's conduct fell "below an objective standard of reasonableness under prevailing professional norms." Goad, 938 S.W.2d at 369 (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694).

- 16 -

However, to establish prejudice in the context of a guilty plea, a petitioner must show that there is a reasonable probability that, but for counsel's errors, the petitioner would not have entered his guilty plea and would have proceeded to trial. Serrano v. State, 133 S.W.3d 599, 605 (Tenn. 2004) (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)). "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Goad, 938 S.W.2d at 370.

In assessing an attorney's performance, we "must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462 (citing Strickland, 466 U.S. at 689). In addition, we must avoid the "distorting effects of hindsight" and must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. 689-90. "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Id. at 688-89. However, "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting Goad, 938 S.W.2d at 369).

First, the Petitioner contends that trial counsel's decision to announce his guilty pleas to four counts in the presence of the jury at the beginning of his trial was ineffective.[2] He asserts that the effect of these guilty pleas "constituted evidence of crimes committed by [the Petitioner] against the very same victim, at the very same time, and at the very same property as the alleged crimes of especially aggravated robbery and especially aggravated kidnapping," even though such evidence is overwhelmingly disallowed under Rule 404(b) as propensity evidence. The Petitioner claims "despite the highly prejudicial effect of the guilty pleas[,]" trial counsel "made absolutely no efforts to secure the entry of those pleas[] outside the presence of the jury, as required by Tenn. R. Evid. 404(b)." Moreover, the Petitioner maintains that his admission of guilt to four of the six crimes "facilitated the jury's inferences of guilt as to the two remaining offenses" that were tried. He claims that because he had "no knowledge as to the proper procedure for the entry of a partial guilty plea," he "took the advice" of trial counsel, which proved to be "not good." He also asserts that trial counsel's failure to enter his guilty pleas outside the presence of the jury prejudiced him by denying his right to a fair trial.

The transcript from the Petitioner's trial shows that after the State read the indictment, the trial court asked for the Petitioner's pleas, and trial counsel, in the presence

---

[2] We have reordered the Petitioner's issues for clarity.

- 17 -

of the jury, replied that the Petitioner was pleading guilty to conspiracy to commit aggravated burglary in Count 1, aggravated burglary in Count 2, conspiracy to commit theft of property valued at $10,000 or more in Count 3, and theft of property valued at $500 or less in Count 6; however, trial counsel stated that the Petitioner was pleading not guilty to especially aggravated robbery in Count 4 and especially aggravated kidnapping in Count 5.

At the post-conviction hearing, trial counsel testified that he and the Petitioner discussed the defense strategy of announcing his guilty pleas to four of the less serious charges in the jury's presence in order for the Petitioner to gain credibility with the jury for his trial on the remaining charges and to explain why the victim's property was found in the Petitioner's backyard. Trial counsel said that at the conclusion of this discussion, the Petitioner approved this strategy. The record shows that this strategy supported the defense theory that while the Petitioner burglarized the victim's home, the Petitioner did not bind the victim's hands and feet and did not beat the victim. The Petitioner, by entering guilty pleas to the less serious charges, attempted to minimize his culpability for the charges of especially aggravated robbery and especially aggravated kidnapping. Our review of the record shows that the Petitioner's guilty pleas in this case were made for the tactical purpose of cementing this defense theory in the jurors' minds. We conclude that, while ultimately unsuccessful, trial counsel's strategy was reasonable in light of the strong evidence placing the Petitioner at the victim's home at the time of the offenses. See Nesbit, 452 S.W.3d at 796 ("The fact that a particular strategy or tactical decision failed does not by itself establish deficiency."). In reaching this conclusion, we note that the record shows the Petitioner was fully advised of this strategy and approved it before it was implemented at trial. Because the Petitioner has failed to show that trial counsel's performance regarding the guilty pleas was deficient, he is not entitled to relief on this issue.

Second, the Petitioner contends that trial counsel was ineffective in failing to object to the admission of the nightstick at trial. We note that the nightstick was clearly relevant—the nightstick was taken from the victim's home, was found at Glover's home, was consistent with the type of object used to inflict the victim's injuries, and was included in Glover's testimony as the weapon the Petitioner used against the victim. See Tenn. R. Evid. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). Moreover, we agree with the State that trial counsel's decision not to object to nightstick was a strategic decision entitled to deference. At the Petitioner's trial, Special Agent Shipman with the Tennessee Bureau of Investigation testified that she was unable to find the Petitioner's DNA on the nightstick due to "insufficient or degraded DNA," and Detective Finley testified that the nightstick was found at the home where Glover resided with Teresa Harley. See Colin D. Savage, 2012 WL 4054814, at *7-8. This testimony tangentially supported the defense

theory that the Petitioner was not the individual who beat the victim with the nightstick and reinforced the likelihood of jury nullification,[3] where the jury would find the Petitioner not guilty of the charges of especially aggravated robbery and especially aggravated kidnapping, despite the evidence supporting the Petitioner's guilt based on his own acts and the fact that he was criminally responsible for Glover's actions. See Tenn. Code Ann. § 39-11-402 ("A person is criminally responsible for an offense committed by the conduct of another, if . . . [a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense[.]"). Because trial counsel's failure to object to the nightstick was very reasonable under these circumstances, we conclude the Petitioner has failed to establish that trial counsel's performance was deficient.

Third, the Petitioner argues that trial counsel was ineffective in failing to call Teresa Harley as a defense witness at trial. He claims Harley could have testified that Glover, not the Petitioner, had the nightstick and that Glover admitted that he bound the victim's hands and feet and beat the victim. As support for this claim of ineffectiveness, the Petitioner claims that trial counsel admitted at the post-conviction hearing that Harley's testimony would have proven helpful.

Initially, the Petitioner has failed to show that Hartley's testimony about Glover's statements would been admissible, given that such testimony is hearsay for which no exception applies. See Tenn. R. Evid. 802, 803. Moreover, at the post-conviction hearing, two jailhouse recordings of conversations between the Petitioner and his girlfriend Ashley Reynolds were admitted, wherein the Petitioner told Reynolds to remind Teresa Harley that she overheard Glover talking about tying up and beating the victim. Trial counsel referenced these recordings and testified that after conducting his own investigation, it was clear that there was no one in Georgia, including Teresa Harley, who could provide helpful evidence in the Petitioner's case, and he informed the Petitioner of this fact. Our review of two jailhouse recordings casts serious doubt on whether Harley actually overheard Glover making these admissions or whether the Petitioner merely pressured Harley to make this claims. These recordings also show that while the Petitioner wanted Harley to tell his

---

[3] Jury nullification arises when a jury disregards the applicable law or ignores the evidence and acquits the defendant. See State v. Taylor, 771 S.W.2d 387, 397 (Tenn. 1989); State v. Paul Allen St. Clair, No. M2012-00578-CCA-R3-CD, 2013 WL 1611206, at *6 n.1 (Tenn. Crim. App. Apr. 16, 2013) (Smith, J., concurring in part, dissenting in part). However, defense counsel should not encourage jury nullification. See State v. Shropshire, 874 S.W.2d 634, 640 (Tenn. Crim. App. 1993) ("[A] trial court cannot be held in error for prohibiting a defendant from advising a jury not to follow the law as the trial court instructs it."); Jerry Lee Craigmire v. State, No. 03C01-9710-CR-00440, 1999 WL 508445, at *13 (Tenn. Crim. App., at Knoxville, July 20, 1999) ("[W]e conclude that the trial court correctly prohibited defense counsel from arguing jury nullification."); see also United States v. Sepulveda, 15 F.3d 1161, 1190 (1st Cir. 1993) ("[W]hile jurors may choose to flex their muscles, ignoring both law and evidence in a gadarene rush to acquit a criminal defendant, neither the court nor counsel should encourage jurors to exercise this power.").

attorney about Glover's acts, he also wanted Harley to "exclude" any discussion of the Petitioner's involvement in these crimes. Most importantly, even if Harley had somehow been allowed to testify to Glover's admissions, a rational jury would have held the Petitioner accountable for Glover's actions under the theory of criminal responsibility. See Tenn. Code Ann. § 39-11-402; Colin D. Savage, 2012 WL 4054814, at *12, *15 (concluding that the evidence was sufficient to support the Petitioner's convictions for especially aggravated kidnapping and especially aggravated robbery because either the Petitioner, or Glover, for whom the Petitioner was criminally responsible, hit the victim several times with the nightstick, which kept her immobile and caused her serious bodily injury). Because the Petitioner has failed to establish that trial counsel's performance as to this issue was deficient, he is not entitled to relief.

Fourth, the Petitioner argues that trial counsel was ineffective in failing to impeach Rodney Glover's "self-serving" testimony. The Petitioner asserts that trial counsel should have impeached Glover with his extensive criminal history. He also claims trial counsel should have impeached Glover by highlighting the absence of evidence corroborating Glover's claim that the Petitioner struck the victim twice with the nightstick.

At the post-conviction hearing, the Petitioner never questioned trial counsel about his failure to ask Glover about his criminal record. The only proof presented about Glover's record was Petitioner's vague and uncorroborated testimony that Glover had recently been convicted of vehicular homicide. Therefore, we agree with the State that the Petitioner failed to prove by clear and convincing evidence that co-defendant Glover had a criminal record. Tenn. Code Ann. § 40-30-110(f); see Tenn. Sup. Ct. R. 28, § 8(D)(1); Nesbit, 452 S.W.3d at 786. Even if we assume that the claim about Glover's criminal history is true, the Petitioner has failed to show that Glover's impeachment regarding his criminal record would have changed the outcome of the Petitioner's trial, particularly in light of the overwhelming evidence of the Petitioner's guilt.

As to the lack of evidence corroborating Glover's testimony, we note that there was abundant proof establishing that the Petitioner was present at the scene of the crime, including the Petitioner's DNA at the victim's home and the victim's property found in the Petitioner's backyard. We note that evidence was admitted at the Petitioner's trial showing that the DNA on the nightstick, which was degraded, did not connect the Petitioner to it and that the nightstick had been actually recovered from Glover's home, not the Petitioner's home. Even if the jury determined that Glover struck the victim with the nightstick, the Petitioner was accountable for Glover's acts against the victim under the theory of criminal responsibility. Because the Petitioner has failed to establish that trial counsel's performance regarding these issues was deficient, he is not entitled to relief.

Finally, the Petitioner argues that the cumulative effect of all of trial counsel's errors deprived him of the effective assistance of counsel. The cumulative error doctrine "is a judicial recognition that there may be multiple errors committed in trial proceedings, each of which in isolation constitutes mere harmless error, but when aggregated, have a cumulative effect on the proceedings so great as to require reversal in order to preserve a defendant's right to a fair trial." State v. Hester, 324 S.W.3d 1, 76 (Tenn. 2010). The Petitioner argues that while "each and every one" of trial counsel's errors "is sufficient to justify post-conviction relief on its own," the gravity of the errors is "amplified even more, when those errors are considered in their totality."

The cumulative error doctrine only applies when there has been more than one error committed during the trial proceedings. Id. at 77. "In the post-conviction context, 'a petitioner cannot successfully claim he was prejudiced by [trial] counsel's cumulative error when the petitioner failed to show [trial] counsel's performance was deficient.'" Tarrants Yvelt Chandler v. State, No. M2017-01639-CCA-R3-PC, 2018 WL 2129740, at *10 (Tenn. Crim. App. May 9, 2018) (quoting James Allen Gooch v. State, No. M2014-00454-CCA-R3-PC, 2015 WL 498724, at *10 (Tenn. Crim. App. Feb. 4, 2015)). Because the Petitioner has failed to establish that trial counsel's performance was deficient with regard to any of his claims, he is not entitled to post-conviction relief under the cumulative error doctrine.

## CONCLUSION

Based on the aforementioned authorities and reasoning, we affirm the judgment of the post-conviction court.

_____
CAMILLE R. MCMULLEN, JUDGE